[No. 2116]

# JOSEPH REHLING, RESPONDENT, v. E. A. BRAINARD, APPELLANT.

[144 Pac. 167]

1. TRIAL—RECEPTION OF EVIDENCE—RESTRICTION TO SPECIAL PURPOSE.

In a trial, without a jury, of a husband's action for criminal conversation, the admission in evidence of letters to plaintiff from his wife containing matters competent and matters incompetent was not error, where the court stated that the letters were admitted merely to contradict any inference that the husband and wife were living together, and there was other and competent evidence relative to the adultery relied on as the basis of the action.

2. APPEAL AND ERROR—GROUND FOR REVERSAL—ADMISSION OF EVIDENCE.

Where incompetent evidence is admitted in a trial without a jury, a reversal is warranted only when the record shows that the competent evidence was insufficient to support the findings, or that the improper evidence affected the result.

3. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.

A party cannot complain on appeal of the admission of incompetent evidence which inures to his benefit.

4. WITNESSES—COMPETENCY—HUSBAND AND WIFE—CONSENT TO TESTIFY.

Under Rev. Laws, sec. 5424, providing that a wife cannot testify for or against her husband "without his consent," a wife was competent to testify for her husband in his action for criminal conversation, where the husband and wife had each consented in open court that the other might testify to anything existing between them having a bearing on the case.

5. HUSBAND AND WIFE — ACTION FOR CRIMINAL CONVERSATION — SUFFICIENCY OF EVIDENCE.

Evidence in a husband's action for criminal conversation, tried without a jury, held to sustain a judgment for plaintiff.

6. HUSBAND AND WIFE — ACTION FOR CRIMINAL CONVERSATION — ISSUES.

In a husband's action for criminal conversation, the issue is whether the wife has been guilty of adultery without his consent or connivance.

7. HUSBAND AND WIFE—CRIMINAL CONVERSATION—DAMAGES RECOVERABLE—MITIGATION.

In a husband's action for criminal conversation, lack of consortium is an element of the damages, but the fact that the breaking up of the home or the destruction of the marital relation has been only partial, and that there has been a reconciliation, may be considered in mitigation of damages.

8. APPEAL AND ERROR—FINDINGS—EVIDENCE.
    The judgment in a case tried without a jury will not be disturbed on appeal, though the evidence is conflicting, where it is supported by any substantial evidence.

APPEAL from the Second Judicial District Court, Washoe County; *John S. Orr*, Judge.

Action by Joseph L. Rehling against E. A. Brainard. From a judgment for the plaintiff, defendant appeals. **Affirmed.**

*Massey & Springmeyer*, for Appellant.

*Stoddard, Moore & Woodburn*, for Respondent.

By the Court, McCARRAN, J.:

This is an action in damage for criminal conversation between appellant and the wife of respondent. Damage was prayed for in the sum of $10,000. The case was tried in the lower court without a jury. Judgment was rendered in favor of plaintiff in the sum of $2,000. From the judgment and from the order denying a new trial the defendant appeals.

The defense interposed by the pleadings denies the alleged wrongful act, and the damage, and by way of affirmative defense appellant alleged that respondent and his wife, prior to the 19th day of June, 1911, conspired to manufacture evidence against the appellant, and conspired to wrongfully accuse appellant of the acts alleged in the complaint for the purpose of extorting money from him.

There are a number of assignments of error asserted by appellant in the case. We will consider only that assignment most seriously urged, and the only one which, in our judgment, demands serious consideration.

[1] The respondent on redirect examination was fully interrogated by his attorneys relative to the relationship existing between himself and wife subsequent to the 19th day of October, 1911, the date on which he testified to having seen his wife in a compromising position with appellant. His testimony disclosed that some time

after the 19th day of October he left the state and went to California, and, having identified certain letters received by him from his wife while he was in the State of California, the same were admitted in evidence over the objection of appellant. The admission of these letters in evidence is the principal error relied upon by appellant for reversal in this case. The evidence tended to establish that these letters were written by Annie Rehling, wife of respondent, after the 19th of October, and were received by respondent, according to his testimony, while he was in the State of California. The appellant, Brainard, had no knowledge of the sending and receiving of the letters, nor of their contents. The letter of December 20 contains a complete confession on the part of respondent's wife, and a full statement disclosing the illicit relations existing between Brainard and herself.

The letter of December 10 is, in substance, a request for respondent to return to Reno, and among other things contains these words: "Well, all at once my eyes are open. Now I am ready to talk and if you think of me as you said you did then, and seemed to when you left, I am your friend in every sense of the word as you said you were mine, and want you to come here now and hear what I have to say."

These letters contained other statements indicating that the respondent had left the home, and that there was at least a temporary separation.

It is the contention of appellant that these letters, purporting to have been written by the wife of respondent without the knowledge or assent of appellant, are objectionable under the rule excluding hearsay testimony, and also under the rule excluding self-serving declarations. There is nothing in the record, in our judgment, that would relieve these letters of their objectionable features in so far as their contained admission and declarations of acts of adultery are concerned. Each of the letters was subject to exclusion under all the rules invoked if they had been admitted for any other purposes than that expressly stated by the court when admitting them.

In reviewing this particular phase of the case, however, we must take into consideration the circumstances under which the letters were admitted, the purpose for which they were admitted, and the force and effect apparently given to them by the trial judge on arriving at his decision. A review of this phase of the case necessarily demands a consideration of the entire field covered by the evidence produced at the trial.

The wife of the respondent, the party from whom these letters purported to have emanated, was called as a witness by respondent, and her testimony given at the trial disclosed a chapter of her life which was replete with debauchery in which the appellant, according to her testimony, was the star actor. Her story told upon the stand, both in direct and through the course of the most searching cross-examination, disclosed a series of acts of adultery committed with the appellant, not only in her own home, but in various lodging-houses in the city of Reno prior to the 19th of October. She testified in detail as to the occurrences on the day of the 19th of October, the date on which it is alleged the respondent discovered appellant in a compromising position with her, and in her testimony she admits the act of adultery on that date. Her testimony not only covers the ground covered by the inadmissible portions of the letters, but without referring to the letters goes much further, and much more in detail. In her testimony she corroborates the statement made by respondent as to the acts and utterances of the respective parties, to wit, herself, the appellant, and the respondent in the presence of each other on the 19th day of October.

As we have already stated, it requires no citation of authorities and no critical analysis to further the conclusion that the letters in question were inadmissible to prove adulterous acts. Their incompetency was a matter manifest and apparent on their very face. With reference to the admission of the letters the record discloses the purpose for which they were admitted, and the attitude of the court in admitting them. The court in admitting

them in evidence expressly stated the purpose for which the letters were admitted, *i. e.*, "contradicting any inference that might be drawn that they were living together as husband and wife, cohabiting together," subsequent to October 19.

It has been held that, even in cases where a trial was conducted before a jury, the admission of incompetent evidence contained in an instrument, part of the contents of which was competent, would not constitute reversible error where the court gave instruction to the jury directing them to disregard the incompetent portion, or where the court specifically instructed the jury as to the purpose for which the instrument or its contents should be considered by them. (*Billings* v. *Albright*, 66 App. Div. 239, 73 N. Y. Supp. 22; *Ball* v. *Marquis*, 122 Iowa, 665, 98 N. W. 496.)

Our reference to this rule applicable to the admission of evidence of this character in the trial of cases before a jury is made without conferring upon it either our approval or disapproval. The established and recognized rules applicable to the admissibility of evidence should, in our judgment, be closely and carefully adhered to, with a view that nothing may inject itself into the record excepting that which is properly admissible under the applicable rules. Strict adherence to these rules forms the surest avenue by which litigation may be speedily determined and by which litigants may be saved interminable annoyance and expense attendant upon reversals by courts of last resorts, and hardshipful retrials.

In a case such as this where the trial is conducted before a court sitting without a jury, it may, in our judgment, be properly presumed, unless the contrary appears, that the court in arriving at its conclusion considered only such evidence as was legally admissible. (*Gernert* v. *Griffin*, 28 Okl. 733, 116 Pac. 439; *Lee* v. *Railway Co.*, 67 Kan. 402, 73 Pac. 110, 63 L. R. A. 271.)

As we have already stated, the incompetent evidence admitted by way of the letters in question was not the only evidence establishing the acts of adultery. Other and competent evidence was before the court by way of

the testimony of the wife of respondent, and if the court deemed her testimony worthy of belief, he was warranted in giving it such weight and consideration as he saw fit. The writer of these letters, wife of the respondent, having taken the stand as a witness for respondent, testified as to all of the matters touched upon in the letters. She was subjected to a long and searching cross-examination, going into every phase of the case. Her testimony in this respect was not objectionable; it was competent, relevant, and material.

[2] We think a rule sufficiently established and worthy of adherence is applicable here, *i. e.*, where incompetent evidence is admitted in a trial of a cause by a court sitting without a jury, a reversal is only warranted when it is apparent from the record that the competent evidence was insufficient to support the judgment, or when it is affirmatively shown that the improper evidence affected the result. (*Miller* v. *Foster,* 28 Okl. 731, 116 Pac. 438; *Gernert* v. *Griffin, supra.*)

It cannot be assumed that the incompetent evidence, which was inseparable from the competent statements contained in the letters, affected the conclusion reached by the trial judge when his decision in admitting the evidence excluded the incompetent portion from consideration. It must be assumed, in the absence of a showing to the contrary, that the trial judge adhered to his position as stated when he admitted the letters in evidence. The rule that injury will be presumed where error is shown unless the contrary appears affirmatively cannot apply where, in a case like this, the incompetent matter, inseparably attached to competent matter, was expressly referred to as not being admissible, or where the admissibility of the instrument is limited to a specified purpose for which it is competent. If the testimony of the wife of the respondent given before the trial court, with the opportunity afforded the court for careful scrutiny and observation of the witness, carried conviction to the mind of the court as to the truth of her assertions, it was sufficient in itself to support the finding.

This court has heretofore held that the admission of incompetent evidence in the trial of a cause by the court without a jury should not of itself be sufficient to warrant a reversal of the judgment, if an affirmance of the judgment is otherwise sustained by a preponderance of competent evidence. (*Fleeson* v. *Savage Silver M. Co.*, 3 Nev. 157; *Robinson* v. *Imperial Silver M. Co.*, 5 Nev. 44.) Other courts have held to the same effect. (*Smith* v. *Scott*, 51 Wash. 330, 98 Pac. 763; *Alexander* v. *Wellington*, 44 Colo. 388, 98 Pac. 631.)

The letters were admitted solely for the purpose of contradicting the inference that respondent was cohabiting with his wife subsequent to the date on which knowledge of her adultery was brought home to him. There were certain statements in the letters which might be considered as tending to disprove such inference. They were properly admissible for this purpose, and under the rule already cited, it must be presumed that the court regarded the letters for no other purpose. (*Willis* v. *Bernerd*, 131 Eng. Rep. 439; *Ball* v. *Marquis*, 122 Iowa, 665, 98 N. W. 496; *Billings* v. *Albright*, 66 App. Div. 239, 73 N. Y. Supp. 22.)

[3] The letters introduced by the respondent, taken in connection with his testimony, establish a fact against his interest, viz, that the acts of appellant caused only a temporary separation of respondent from his wife, hence lessening the injury, and this, no doubt, was the basis for the court's conclusion in fixing the damages. Of this the appellant cannot complain, inasmuch as the admission of the letters inured to his benefit. (*Lamance* v. *Byrnes*, 17 Nev. 197, 30 Pac. 700.)

[4] The wife of respondent was a competent witness to testify in his behalf. Section 482 of the civil practice act (Rev. Laws, sec. 5424) provides:

"A husband cannot be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either, during their marriage or afterwards, be, without the consent of the other, examined as to any communication

made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

As we have already stated, the record discloses consent given by the respondent and by his wife, respectively, in open court that the other might testify as a witness about any and all facts and circumstances and mutual confidences which existed between them having a bearing on the case. The error contended for in this respect not being seriously urged by appellant, we deem it sufficient to say that the action of the trial court in permitting the witness Annie Rehling, wife of respondent, to testify was not an error under the statute cited. (*Scheffler* v. *Robinson,* 159 Mo. App. 527, 141 S.W. 485; *Smith* v. *Meyers,* 52 Neb. 70, 71 N.W. 1006; Wigmore on Evidence, sec. 2241.)

[5] As we view the evidence as disclosed by the record in this case, it was sufficient to support the judgment, if in the opinion of the trial court the testimony of the wife of respondent was worthy of belief, and we find nothing in the record to lead us to assume the contrary. The plea of appellant asserting a conspiracy on the part of respondent and his wife, and the carrying out of the conspiracy on the 19th of October by respondent and wife as coconspirators, is, in our judgment, inconsistent with the acts and conduct of appellant himself subsequent to the 19th of October, inasmuch as it is disclosed from the record, by the testimony of appellant, that on several occasions after the 19th of October, Annie Rehling, the wife of respondent, visited the place of business of appellant, and while there transacted business with appellant, and received credit from appellant, and merchandise sold to her by appellant on credit, as he testifies, was delivered to her house, the place at which, according to his contention, he had been made the subject of a previously arranged conspiracy to extort money from him. Moreover, the debauching of respondent's wife, according to her own testimony, was not confined to the date of October 19. She testifies to numerous acts of adultery committed by herself and

appellant prior to the 19th of October, the date on which they were caught in the act by respondent.

[6–7] The issue in cases of this character is as to whether or not the appellant committed adultery with the wife of respondent without the consent or connivance of the latter. This being proven, the amount of damages in which the party sued must respond is a matter depending upon such mitigating circumstances as may be shown to appear. The lack of *consortium* of the spouse is always an element upon which damages are estimated, and when this does not appear, or where, as in this case, there appears a reconciliation and only a partial, if any, breaking up of the home, or only a partial, if any, destruction of the marital affection or relation, these elements are properly considered in mitigation of damages. (*Smith* v. *Meyers, supra; Billings* v. *Albright, supra; Scheffler* v. *Robinson, supra.*)

[8] The question as to whether or not the appellant was guilty of adultery with the wife of respondent was one to be determined by the trial court. There is a substantial conflict in the evidence. The testimony of respondent tends to establish the fact by circumstantial evidence, while the testimony of Annie Rehling was a direct and positive accusation, not alone as to one occurrence, but as to many. A complete denial of all of these statements is in the testimony of respondent. There was evidence eminently substantial to support the finding as to adultery. Following the almost universal rule that where there is a substantial conflict in the evidence, an appellate court will not disturb the decision of the court below, and especially in view of the fact that the decision is supported by substantial evidence.

Other minor errors are asserted by appellant, but we deem them unimportant or nonprejudicial.

The judgment and order appealed from are sustained. It is so ordered.