CATHERINE TISSUE, Plaintiff, Appellee, v. AL DURIN et al., Defendants, Appellants, MARVIN STEELE et al., Defendants.

No. 41554.

FEBRUARY 14, 1933.

REHEARING DENIED JUNE 23, 1933.

Wheeler, Elliott, Shuttleworth & Ingersoll, for appellants.

Davis & Davis, for appellee.

STEVENS, J.—Appellee in this action seeks to recover damages for personal injuries alleged to be due to the negligent operation of an automobile by appellants. The automobile, a Ford sedan, was owned by the appellant Al Durin, and was, at the time complained of, being operated by his son and coappellant, George Durin. Among the numerous propositions relied upon for reversal is the claimed insufficiency of the evidence to sustain the verdict. This necessitates a somewhat detailed statement of the record.

Early in the afternoon of November 11, 1930, George Durin, accompanied by Harold Secor, a fellow high school pupil, left Cedar Rapids over highway No. 161 to drive to Iowa City to attend a game of football. Upon reaching the outskirts of the city, Durin and Secor overtook Marvin Steele, Kermit Hayden, Howard Secor, and Russell Pendleton, with whom they were acquainted and invited them to get in the back seat of the automobile and ride to their common destination. The young men accepted the invitation, and rode in the back seat of the car to Iowa City. For some distance north of that place, there is a decline in the highway to the south. The paved portion of the highway is eighteen feet in width, but is supplemented by a six-inch water drain, or something of similar character, on the right side, looking toward Iowa City. The shoulder on that side of the highway at the place material to this controversy is comparatively level, and four to five feet in width. As the car of appellants approached from the north, appellee and Catherine Keefe were walking north on the shoulder. The occupants of the car saw the young ladies, who were walking single file, with appellee in the lead, when they were a short distance away. Immediately before the car passed appellee and her companion, who were still walking on the shoulder, the rear right door of the car suddenly opened, struck appellee, and knocked her down. Her body was thrown into a ditch immediately adjacent to the outside of the shoul-

der while her feet rested thereon. Both appellee and her companion testified that they were walking on the outside of the shoulder about four feet from the edge of the pavement. Neither saw the car door open, and the first knowledge either of the girls had thereof was when appellee was struck. Catherine Keefe testified that she heard a scream, mingled with shouts or yoo-hoos from the car. A motorist later driving northward, seeing the plight of appellee, turned his car, and took her as quickly as possible to a hospital.

Appellant's version of what occurred was that Hayden, who occupied the right end of the rear side of the automobile, in some way not intended by him, caused the door to open, when it was caught and blown back by the wind just as the car came opposite appellee. Appellant's car continued on its way until it reached the foot of the hill, when, it is claimed by appellants, they turned around and drove toward the place of the accident. Before arriving at that point, they met the car in which appellee was being conveyed to the hospital.

Miss Keefe testified that she saw a hand reaching out to take hold of and shut the door, and that some of the occupants of the car were still shouting.

It will be observed from the foregoing statement that the range of the testimony is exceedingly narrow, and that much is lacking in definiteness. The witnesses for appellant testified that the car was being driven in the usual course of traffic, and that the right wheels were from a foot to a foot and a half from the edge of the pavement. The door of the automobile which struck appellee extended, when opened wide, twenty-nine inches from the body. It is manifest from this fact that one side or the other is in error as to their exact location at the time the injuries were inflicted. If appellee was walking four feet from the edge of the pavement and the west wheel of the automobile was eighteen inches on the other side thereof, the unfortunate affair could not have happened. If appellee was forty-eight inches from the edge of the pavement, the right wheels of the car must have been driven upon the shoulder. Conversely, if the right wheels of the car were eighteen inches from the opposite edge of the pavement, appellee must have been walking much nearer the line than the testimony in her behalf shows. The coincidence of the sudden opening of the door at the instant appellee was passing may not be without significance. It has at all times been the theory of appellee that the occupants of the car saw the young ladies walking along the highway; and, for the purpose of attracting their atten-

tion, the driver of the car diverted it from its usual course toward them and negligently drove it in such close proximity that, when the door was opened for the purpose of making some comment to the girls, it struck appellee, with the consequences stated.

The sufficiency of the evidence tending to directly sustain the allegations of negligence relied upon by appellee may well be doubted. The ultimate inference permissible to the jury did not, however, depend wholly upon direct proof. The facts thus established were required to be analyzed and considered concurrently with all of the circumstances shown and throwing light thereon. The final conclusion must have been rested upon such fair and reasonable inferences as might be drawn from the record as a whole. It was the province of the jury, if sufficient was shown to justify submission of the evidence to it, to draw such inferences. To entitle appellee to recover, the burden rested upon her to establish the allegations of her petition by the preponderance of the evidence. The jury could not have properly inferred from anything in the record that the driver of the automobile, independent of any concerted action with one or more of the occupants of the car, swerved it toward the shoulder and negligently drove it in such close proximity to appellee as to cause the injuries. George Durin testified that he was not conscious that appellee had been struck until the car had proceeded some distance down the hill. Some, or all, of the occupants of the back seat testified that they saw appellee lying on the ground when the car was approximately twenty-five feet south of her. If the driver negligently changed the course of his car and drove it in such close proximity to appellee, as claimed by her, for the purpose, in common with his companions, of making comments to the young ladies, then, whether he caused the door to be opened or not is not material because the negligence, if any, in such case would be joint, and all who participated therein would be liable.

The credibility of the witnesses was for the jury. Appellant's version of what occurred was obviously rejected by the jurors. If the jury believed that appellee occupied the place on the shoulder claimed by her in the testimony, then, as stated, the right wheels of the automobile must have been driven thereon. In no other way could appellee have been injured. The failure of the driver of the car to stop and render assistance to appellee, after he knew she had been injured; is entitled to some consideration in determining the credibility of his testimony. The reason given for not stopping was

the extremely heavy condition of the traffic. The car could, however, have been driven upon the shoulder. The jury may also have believed the testimony of Miss Keefe, that some of the occupants of the car called or made comments as the parties approached each other. The analysis of, and proper inferences to be drawn from, this testimony was for the jury. If the car was, in fact, swerved to the right, and driven in such close proximity to appellee that the door was opened by Hayden as a part of a concerted plan to attract the attention of the young ladies, the jury could properly have found that the negligence charged was proven.

The question is a close one, and perhaps the jury had some room for speculation; but this alone does not require that the verdict be set aside. On the record as a whole, the court is of the opinion that the verdict is not so clearly contrary to the evidence as to justify a finding, as a matter of law, that the evidence was insufficient to sustain the necessary elements of appellee's cause of action. The demurrer to the evidence was properly overruled.

██ II. After the jury had been passed for cause by appellee, counsel was permitted to inquire generally of the jurors whether any of them were interested directly or indirectly in any liability, automobile, or casualty insurance, either as a stockholder, officer, agent, or employee thereof. Appellant moved the court to declare a mistrial of the cause. The purpose of the inquiry, if in good faith, was to ascertain from the jury whether they sustained such relationship to any casualty insurance company as might influence them in reaching a conclusion in the case. The question approaches dangerously near to the line of permissible inquiry. We held, however, in Raines v. Wilson, 213 Iowa 1251, 239 N. W. 36, that the following question, "Are any of you or any of your immediate family stockholders in any insurance company", was not improper. The only possible prejudice that could result from the inquiry was the reference to casualty insurance. The inquiry, in the present instance, was similar to that in the cited case. The motion for the discharge of the jury was based wholly upon the inquiry as stated above. No record appears to have been made, and the language quoted may, or may not, be strictly accurate. In any event, the court is of the opinion that the motion was properly overruled.

██ III. Motions were made by each of the appellants for a directed verdict. These motions were based upon the alleged insufficiency of the evidence to sustain any of the grounds of negligence

charged. What we have already said sufficiently disposes of the proposition here urged. The liability of Al Durin arises wholly because of the statute, section 5026 of the Code of 1931. The owner of the car is not excused from liability because the injuries complained of would not have occurred but for the joint negligence of the driver and some other person. It is sufficient if it was a proximate cause. Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 221 N. W. 514; Robinson v. Bruce Rent-A-Ford Co., 205 Iowa 261, 215 N. W. 724, 61 A. L. R. 851; Duncan v. Rhomberg, 212 Iowa 389, 236 N. W. 638. Of course, if no other negligence than that of Hayden was shown, Al Durin would not, as the owner of the car, under the statute, be liable.

IV. Appellee's cause of action was alleged in two counts of the petition. The negligence charged in count one was:

"That as said defendants were approaching the limits of said city they drove, caused or permitted said automobile to be driven, in such a negligent manner as to cause the same to run into this plaintiff, and that said automobile, or some part thereof, struck this plaintiff in the face and head knocking her to the ground and rendering her unconscious and causing the injuries hereafter complained of."

Several alleged specific acts of negligence of general character were charged in count two. In so far as the issues therein tendered were submitted to the jury, they will be stated later in connection with another allegation of error.

At the close of all the testimony, appellants moved the court to withdraw the general allegations of negligence set forth in count 1 from the jury. The motion was overruled. The specific allegations of count 2 did no more than elaborate the general allegations of count 1. They proceed upon the same general theory, and indubitably refer to identical transactions. The court might well have omitted any reference to count 1 of the petition. Appellee having alleged specific acts of negligence in count 2, the burden was upon her to make proper proof thereof. McCoy v. Wabash Ry. Co., 210 Iowa 1075, 231 N. W. 353. No confusion or lack of understanding on the part of the jury could have resulted, however, from the statement of the matters pled in count 1. The evidence was confined strictly to the single transaction, and there was nothing in the presentation thereof which could possibly have misled the jurors.

V. Appellants also moved the court to withdraw numerous allegations of the petition relative to the damages claimed to have been received by appellee, upon the principal ground that they were without support in the evidence. Testimony bearing upon various elements of loss was introduced by appellee which appellant sought by motion to have withdrawn. The overruling of the motion as to each and all of the grounds thereof was either proper or so clearly without prejudice as to require no extended discussion. Possibly not only the items of negligence were clearly established by the evidence, but the instructions sufficiently met the situation, and the court was not bound to determine the exact sufficiency of the evidence as to each in advance of submission of the cause to the jury.

VI. The criticism of instructions 4 and 5 is without merit. The criticism of instruction 6 is exceedingly technical. In it the jury was instructed that ordinary care means such care as a person of ordinary prudence and caution would exercise under like or similar circumstances; the absence of such care constituting negligence. The court, however, said that ordinary care in this case depended upon the facts and circumstances proven upon the trial. Of course, the definition is the same in all cases, but the instruction as a whole is subject to no valid criticism. The definition of proximate cause, as given by the court in another instruction, is possibly to some extent lacking in clarity, but it is difficult to perceive how a jury could have been in any way misled thereby. The definition includes all of the necessary elements, and, even though lacking to some extent in clarity, was not inaccurate.

VII. The criticism of instruction 8 is not wholly without merit. In this instruction the court told the jury that the mere fact that an accident happened raised no presumption of negligence on the part of the defendants. This was followed by the statement that, in determining whether the defendants were negligent, the jury should consider only the negligence charged by the plaintiff and set forth in the issues in instruction 1, and that only such negligence as was the proximate cause of the injury should be considered. It would have been better if the court in this instruction had referred more directly to the specific allegations of negligence charged in count 2 of the petition than to instruction 1, which included both counts.

As previously stated, however, the evidence was clearly and directly on both sides so limited to the single occasion when ap-

pellee was injured, that no basis for any misunderstanding on the part of the jury as to the negligence referred to by the court could have resulted.

VIII.   In addition to a general denial, appellants pled in their answer that the injuries received by appellee were the result of a mere accident for which they were in no sense responsible. Instruction 10 defined a mere accident. It is the thought of counsel that some improper burden was cast upon the appellants by these instructions. We find nothing therein to justify the criticism. All of the remaining paragraphs of the charge are criticized. The court in paragraph 17 permitted recovery for permanent injuries. These, as stated therein, were limited to an injury to the face and the destruction of a tooth. Both injuries were permanent in character, and we perceive no reason why they should not have been considered by the jury in fixing the amount of her recovery. Throughout the brief and argument of counsel, and at every point, it is the contention of counsel for appellant that the evidence was wholly insufficient to sustain the allegations of the petition. Many of the matters already referred to are repeated in the motion for a new trial. To dispose of each specific proposition urged by counsel would extend this opinion to an unreasonable length. Much of the criticism urged is exceedingly technical. Perfection is not attained in the trial of causes. Minor errors here and there, which in no way affect the substantial rights of the parties, frequently occur. Assuming, as we have already held, that the evidence was sufficient to justify the submission of the specific issues of negligence to the jury at all, appellants on the whole had a fair trial.

IX.   The jury returned a verdict in favor of appellee for $2,500. Some of her injuries were painful, but none were of a particularly serious character. Her nose was broken, and she, for a considerable time, suffered pain in the head. She left the hospital the night of the injury and returned to the place where she roomed. She made visits to the doctor, and soon returned to her classes in the University where she was a student. She was unable to pursue all of her studies or to perform services in a tea room where she had previously been able to earn her board and something additional for overtime. She received a scar on her face, and suffered considerable pain from an injury to her arm. At the time of the trial she had fully recovered from the injuries to her nose. We think the verdict is so excessive that it should not be permitted to stand.

The nature and character of her injuries, none of which, except the broken tooth and the slight scar on the side of the face, are permanent, are minor. She suffered but slight loss of time.

In the opinion of the court a verdict of $1,500 would liberally compensate appellee for all of the damages sustained. We conclude, therefore, that, unless she remit $1,000 of the verdict within thirty days after the filing of this opinion, the judgment will be reversed; otherwise, it will, as modified, be affirmed.—Affirmed on condition.

MITCHELL, UTTERBACK, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.

KINDIG, C. J., and ALBERT, J., dissent, holding that a jury question is not presented.